Agnes, Peter W., J.
1. Introduction
This is a civil action in which the minor plaintiff, Sarah Martin, has filed an action to recover damages for personal injuries she suffered on or about July 26, 2003 (when she was twelve years old) at a public lake park known as Kiawanas Beach in Upton, Massachusetts. The plaintiff alleges that due to the negligence of the defendants, Town of Upton and O’Leaiy Welding, she was injured when she fell and was impaled on a sharp metal pole that was positioned to accommodate a railing that was to be erected at a later date. She injured her neck and chin and was left with permanent injury and scarring. She also injured her knee and has been unable to pursue certain athletic activities. Her neck injury has required treatment since the date of the injury, and she may require additional surgery to address the scarring. The defendant town has filed two motions. One seeks an order permitting it to have access to the psychological treatment and counseling records of the plaintiff held by the Department of Social Services and subject to one or more privileges including the patient-psychotherapist privilege under G.L.c. 233, §20B. The second seeks an order permitting it to have access to the counseling and therapy records of the plaintiffs sister, an alleged eyewitness to the event.
2. Factual Background
The record indicates that the plaintiff treated with a “counselor” following the incident regarding her relationship with her sister as well as her feelings about the incident. The record also indicates that the plaintiffs sister, who witnessed the accident, was a “straight A” student before the accident, but developed post-traumatic stress disorder as a result of the accident and a number of other serious behavioral problems. She is in counseling. There is evidence in the record that the plaintiffs sister Amy, an alleged eyewitness to the events, blamed herself for the accident. In some records before the court, there is an indication that the plaintiff may have been pushed by her sister Amy. The plaintiff denies this, and her father also denied that either the plaintiff or her sister Amy ever stated that the fall was due to Amy pushing the plaintiff. The relationship between the sisters changed suddenly and immediately after the accident. As a result of the incident, plaintiff testified at a deposition that she has had nightmares and is self-conscious about a prominent scar that is visible on her neck. The record also indicates that beginning in December 2003, the plaintiff and her other siblings were placed with the Department of Social Services for seven months including a stay in foster care for about five months. According to the deposition testimony of plaintiffs father, the DSS intervention appears to have been triggered by a comment made by sister Amy to one of the children during a group therapy session. According to the report of a psychologist dated February 2004 who was treating the plaintiff, a copy of which is attached to the defendant’s motion, the plaintiff “has had a number of recent stressors in her life” including the injury that is the subject of this civil suit and “instability in her living situation.” The report recommends continued treatment with another therapist with whom plaintiff had treated in the past. Defendant maintains that “[a]s a result of the alleged incident, the minor plaintiff is claiming injuries including a fractured pallet, nicked facial artery, a four (4) inch puncture wound, dislodged tooth, two root canals, neck scarring, nightmares and mental insecurities necessitating counseling.” Defendant’s Memorandum of Law at 2. To support this assertion, defendant cites a single source — plaintiffs answer to interrogatory number 3 propounded by the defendant O’Leary Welding. In reply to this interrogatory about the nature and extent of her injuries, plaintiff responds “Sarah received a fractured pallet and nicked facial artery, a four inch puncture wound, dislodged tooth, two root canals, insecurities and pain. She could not chew for a very long time, approximately three weeks. Sarah had nightmares and even thoughts repeatedly during the day. She also became itchy.”
*309 3. Discussion
The defendant town maintains that “[b]y claiming that she is suffering from nightmares allegedly resulting from the subject incident, the plaintiff has introduced her mental or emotional condition as an element of her claim” thus warranting a finding by this court, pursuant to G.L.c. 233, §20B(c), that it is more important to the interests of justice that privileged communications be disclosed than that communications between the plaintiff and her therapists be kept confidential. Defendant’s Memorandum of Law at 4-5. The first issue that must be faced is whether the plaintiff has introduced her mental or emotional condition as an element ofher claim. See G.L.c. 233, §20B.
4.
The measure of damages in a negligence case are all of the losses that flow directly from the injury. “A plaintiff who has suffered physical injury through the fault of a defendant is entitled to recover for pain and suffering; for reasonable expenses incurred by him for medical care and nursing in the treatment and care of his injury; for diminution in his earning power; and for such pain and suffering and such expenses and diminution of earning capacity as are shown to be reasonably probable to continue in the future. The measure of damages is fair compensation for the injury sustained.” Rodgers v. Boynton, 315 Mass. 279, 280 (1943). This definition includes recovery for both physical pain and suffering as well as mental and emotional pain and suffering. Barney v. Magenis, 241 Mass. 268, 273 (1922). Trial judges typically explain this concept to the jury by stating that,
Pain and suffering are of two types: physical pain and suffering, and mental pain and suffering. For physical pain and suffering, you are to consider the areas of the body in which you find the plaintiff physically injured. You are to take into account the past pain and suffering endured by the plaintiff since the date of the injuries, the present pain and suffering caused by the injuries and any future pain and suffering which were proved with reasonable medical probability. Mental pain and suffering includes any and all nervous shock, anxiety, embarrassment or mental anguish resulting from the injury. Also, you should take into account past, present and probable future mental suffering. Taking into consideration the nature of the injury, you are to determine what would be a fair and reasonable figure to compensate the plaintiff. You may consider the extent to which the plaintiffs injuries have caused [him/her] a loss of pleasures which [he/she] otherwise probably would have had in the form of work or play or family life or whatever. The plaintiff is entitled to full compensation for any reduction in the enjoyment of life which you conclude has resulted or probably will result from this accident.
Superior Court Civil Jury Instructions, supra, §2.1.13. (MCLE). The mere fact that the plaintiff seeks to recover money damages for the mental pain and suffering she may have suffered and may continue to suffer as a result of being impaled on a fence, including the shock and anxiety she may have experienced upon realizing what had occurred, the anxiety and anguish she may have experienced over whether she might bleed to death or die, the anxiety and apprehension she may have experienced over whether she would make a full recovery, the suffering she may have experienced as a result of reliving the event in her mind or from nightmares about the event, and the anxiety and embarrassment she may have experienced or experience in the future when people see the scar on her neck, are all items of damages encompassed within the parameters of an ordinary or “garden variety” tort action. See, Sorenson v. H&R Block Inc., 197 F.R.D. 199, 204 (D.Mass. 2000), quoting Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 226-27 (D.Mass. 1997); Shermann v. Krauth, Superior Court No. 02724 (Worcester Super.Ct. May 2, 2003) (Page, J.); Higgins v. Reslow, 5 Mass. L. Rptr. 316 (July 6, 1996) (Houston, J.). The effort to recover such damages in a negligence action is not what the Legislature meant when it provided that a plaintiff who places her mental or emotional condition into her claim or defense may be required to waive her privilege. See G.L.c. 233, §20B(c) (“In any proceeding, except one involving child custody, adoption, or adoption consent, in which the patient introduces his mental or emotional condition as an element of his claim or defense, and the judge or presiding officer finds that it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected”). Otherwise, most plaintiffs in personal injury cases who happen to be in therapy for preexisting problems when they suffer a physical injury due to another’s negligence or who seek therapy in an effort to deal with problems that arise or are exacerbated by a physical injury due to another’s negligent conduct would be forced to choose between the value of their therapeutic relationship and the importance of being compensated for the physical and mental pain and suffering that ordinarily is incident to an injury caused by another’s negligence. This is inconsistent with the legislative purpose of G.L.c. 233, §20B to “protect justifiable expectations of confidentiality that people who seek psychotherapeutic help have a right to expect.” Commonwealth v. Clancy, 402 Mass. 664, 667 (1988).
5.
The determination of whether a plaintiff has made her mental or emotional condition an element of her claim must be based on a consideration of all the circumstances. Commonwealth v. Seabrooks, 433 Mass. 439, 450 n.10 (2001). Certainly, if an expert witness will testify that the plaintiff suffered a mental *310 health Injury or developed a diagnosable condition as a result of the defendant’s negligence and for which compensation was sought, there should be a balancing of interests by the trial judge pursuant to G.L.c. 233, §20B(c) to ascertain whether privileged materials should be disclosed. Even if no expert witness testifies, the plaintiff or another witness may make the plaintiffs mental or emotional condition an element of her claim by describing harm for which she seeks compensation in the form of (1) extraordinary and chronic mental pain and suffering, or (2) a specific injury or impairment such as depression, a mood or relationship disorder, a fear, phobia or aversion, or the functional equivalent of any one of these conditions.
6.
With respect to the defendant’s request for access to the plaintiffs records, the question is whether an adolescent who alleges a physical injury as a result of another’s negligence accompanied by severe pain and suffering including mental anguish and nightmares for a period of time and continuing mental pain and suffering over a scar which may require additional surgery has for those reasons introduced her mental or emotional condition as an element of her claim in this negligence action. I believe that on the basis of the record before me, the answer is “no.” Contrast, Doe v. Messier, Mass.Super. Court No. 2004-2512C (Worcester February 2, 2006) (Locke, J.) [20 Mass. L. Rptr. 567); Martin v. Walgreen Eastern Co., Mass. Superior Court No. 031340 (Worcester March 22, 2005) (Agnes, J.) [19 Mass. L. Rptr. 224]; Donovan v. Pressman, 2000 WL 1257463, 12 Mass. L. Rptr. 65 (Worcester August 28, 2000) (Agnes, J.).
7.
With respect to the defendant’s request for access to the plaintiffs sister’s records, the parties assume and the court presumes that the patient-psychotherapist privilege is applicable to communications made by plaintiffs sister to therapists and counselors following the incident in question, and that the defendant’s motion seeks access to these privileged materials. Despite the defendant’s belief that the records will support its position that the plaintiffs sister may have pushed her and caused her to fall, there is no provision made in G.L.c. 233, §20B for access to the privileged records of a mere witness in such circumstances. Unlike in a criminal case, there is no constitutional basis for a defendant in a civil case to insist on the disclosure of otherwise privileged material to insure a fair trial.
ORDER
For the above reasons, the defendant Town of Upton’s motions are DENIED.